IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BASIS INTERNATIONAL LTD.,

    Plaintiff,

    v.                                                                       Civil No. 11-00953-WJ-ACT

RESEARCH IN MOTION LIMITED
and RESEARCH IN MOTION CORPORATION,

    Defendants.

**TEMPORARY RESTRAINING ORDER**

      THIS MATTER comes before the Court upon Plaintiff's Motions for a Temporary Restraining Order (**Doc. 21**), filed November 30, 2011.  Plaintiff ("BASIS") seeks a Temporary Restraining Order ("TRO") prohibiting Defendant ("RIM") from using its long-established trademark "BBX" at an upcoming conference in Asia on December 7 and 8.  Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is well-taken and shall be granted.

**Background**

      This is a civil action for trademark infringement and unfair competition.   BASIS is a software company which, for the past 26 years, has provided software application developers with its BBX branded tools and software products.  The BBX software allows developers the ability to write software that is not tied to a particular operating system, but can run on any operation system of choice.  BASIS holds two federal registrations for its BBX Trademark Registrations in connection with computer software.  RIM is a Canadian company that designs, manufactures and markets wireless solutions, including smartphone "apps" for the worldwide

mobile communications market.

BASIS alleges that RIM has already infringed the BBX mark, causing confusion among U.S. consumers and erosion of customer goodwill, by using BBX to launch its new platform at a San Francisco conference on October 18, 2011. RIM has refused BASIS' requests to stop the infringement. The instant motion asks the Court to enjoin RIM from using the BBX mark at an upcoming conference to be held in Singapore on December 7 and 8, 2011. The conference will be attended by developers who may be users or potential users of BASIS' BBX software.

Due to the urgency of this matter, the Court held a telephonic conference on December 5, 2011. The parties were given until 10:00 a.m. Tuesday, December 6, 2011 to submit any other materials for the Court's consideration, in addition to the pleadings already on the Court's docket in this case. Parties were also advised that, based on those pleadings, the Court would issue a ruling at that time.[1]

**Discussion**

BASIS contends that it has no adequate remedy at law to compensate for losing control of its commercial identity and the goodwill attached to its BBX mark; hence, its request for an Order enjoining RIM from its planned use of the BBX mark at December 7th Singapore conference. BASIS states that it is not seeking to stop RIM from attending the Singapore conference or from marketing its new product; rather it seeks to prohibit RIM's use of the BBX

---

[1] The time urgency is due to the time difference between New Mexico and Singapore, which makes it necessary for the Court to issue a ruling by December 6, 2011 in order to be in place before the conference begins. The Court also considered holding a hearing on this matter, but given current inclement weather in New Mexico as well as forecasts of a continuation of the same, decided to give the parties an additional opportunity to brief the issue and then issue a ruling based on those briefs. The "thorniest" issues were given some attention during the phone conference so that parties would be prepared to focus on these in any additional briefing.

mark.

**I.       Jurisdiction**

The Lanham Act specifically authorizes courts to issue preliminary and permanent injunctions to prevent trademark infringement. See 15 U.S.C. § 1116 ("The several courts vested with jurisdiction of civil actions arising under this Act [including federal district courts] shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable"); 15 U.S.C. § 1114(a) and § 1125(a).

Because Defendant is a Canadian corporation, and the upcoming conference is in Asia, the initial concern is whether this Court has jurisdiction to issue an injunction. Congress has the power to prevent unfair trade practices in foreign commerce by citizens of United States, although some of the acts are done outside the territorial limits of United States. *Steele v. Bulova Watch Co*., 344 U.S. 280, 287 (1952). This power comes from the "broad jurisdictional grant" in the Lanham Act, with its "sweeping reach into 'all commerce which may lawfully be regulated by Congress.'" *Nintendo of Am. v. Aeropower Co*., 34 F.3d 246, 249 (4th Cir 1994) (citing *Steele* at 286). Thus, this Court may issue an injunction having extraterritorial effect in order to prevent trademark violations under the Lanham Act where: the extraterritorial conduct would, if not enjoined, have a significant effect on United States commerce, and then only after consideration of the extent to which the citizenship of the defendant and the possibility of conflict with trademark rights under the relevant foreign law might make issuance of the injunction inappropriate in light of international comity concerns. *Nintendo.*, 34 F.3d at 250-51 (citing *Steele*, 344 U.S. at 283-86) (noting that the Supreme Court in *Steele* "long ago recognized the power of federal courts in appropriate circumstances to issue injunctions prohibiting extraterritorial conduct that in violating the Lanham Act would cause harm to United States

commerce."). The tests that courts have used to decide whether extraterritorial application of the Lanham Act is proper vary slightly, but all of them require that the plaintiff prove a substantial or significant effect on U.S. commerce.[2]

A.      Significant Effect on U.S. Commerce

RIM argues that its alleged conduct would have an insufficient effect on United States commerce to grant an injunction, pointing out that the upcoming Singapore conference is intended to serve customers in Asia and that only several of the 700 people who will be attending the conference will be from the United States. RIM also contends that the conference will not be broadcast live, and any references on the Internet to the conference will not have the required significant effect on commerce. BASIS argues that it is naive to think that impact of the conference (and RIM's presentation using BBX products) will be limited to the people attending the conference. The Court agrees with this assessment, finding it somewhat ironic that the very nature of the disputed software product is making world-wide dissemination of information more easily accessible than before. Also, in its supplemental briefing, Plaintiff brings to the Court's attention that RIM has built a special channel just for the purpose of publishing the content of the conference, and separate website to advertise the conference as well. *See* Doc. 32 at 3.

BASIS has shown that confusion of the BBX mark has already occurred. It *is* naive to

---

[2] Defendant describes the various tests in Doc. 30, at 6 n.2. The test used by the Fourth Circuit is that: (1) the defendant's conduct must have a substantial effect on U.S. commerce, (2) the defendant must be a U.S. citizen, and (3) there can be no valid trademark registration in the foreign country and no conflict with trademark rights conferred by that foreign country. *Vanity Fair Mills, Inc. v. T. Eaton Co*. 234 F.2d 633, 642-43 (2d Cir. 1956); *see Nintendo of Am. v. Aeropower Co.*, 34 F.3d 246 (4th Cir. 1994) (using "significant effect"); *see also Reebok International, Ltd. v. Marnatech Enterprises, Inc*., 970 F.2d 552 (9th Cir. 1992) (enumerating factors that consider the strength of the effect on U.S. commerce).

believe that further confusion of the BBX mark in the United States will be confined to only those attending the conference from this country.  Despite the location of the upcoming conference in Singapore, it is not a stretch to state that RIM is attempting global publicity, much of which is aimed at BASIS's core customer base— U.S. software developers.

Thus, I find that RIM's conduct will have a significant effect on U.S. commerce sufficient to apply the Lanham Act.

B.      Citizenship of Defendant

RIM also argues that the Lanham Act cannot be applied because the Singapore conference is not being held by the RIM, but by a Singapore company "Research in Motion Singapore Pte Ltd." and its Canadian parent, Research in Motion Limited.  The allegations in the Complaint are directed against RIM's entities in the United States and in Canada.  Compl., ¶ 2.  Defendant advised the Court that the United States RIM hosted the October conference in San Francisco, while the Singapore RIM company was hosting the conference in the Asian forum.  Nevertheless, it appears to be undisputed that RIM has a presence in the United States, even though this particular entity may not be hosting the conference in the Asian forum, and RIM does not disavow any connection between the RIM entities holding the conference and the United States counterpart.  Also, BASIS asserts that RIM has conducted extensive business in this country, and that almost half of RIM's revenue comes from this country.  Therefore, the Court finds that RIM has a presence in the United States necessary in order to make injunctive relief proper.

C.      Conflict with Foreign Law

RIM has no trademark registration or other protectable rights in Singapore which might pose a conflict with foreign law.  Defendant raises no other issues with regard to this factor.

5

Thus, I find no international comity concerns here.

The Court has reviewed the cases cited by RIM in both the Emergency Motion for Court Teleconference (Doc. 30) and the Supplemental Authority filed by RIM after the hearing (Doc. 33). None of these cases are sufficiently similar to call into question the Court's application of the Lanham Act extraterritorially.[3] A more comparable case is *Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino*, 945 F.Supp. 563 (S.D.N.Y.,1996). In *Trockadero*, an all-male satirical ballet troupe brought an action against a competing troupe, alleging infringement of its "Trockadero" marks. The court issued an injunction, finding that the Lanham Act had extraterritorial application to alleged acts of infringement in Japan. RIM claims that *Trockadero* is different from this case because RIM has not engaged in widespread promotion of the BBX mark aimed directly at BASIS's consumer base. However, this argument is weak. First, it centers on only one of the factors which the Court must consider in whether to grant the

---

[3] For example, RIM relies on *McBee v. Delica Co., Ltd.* 417 F.3d 107 (1st Cir. 2005), in which the court decided not to apply the Lanham Act. In that case, an American jazz musician sued a Japanese clothing retailer that adopted a name matching the musician's as its trade name for its adolescent female clothing line. The court concluded that the mere existence of defendant's website did not cause plaintiff harm, noting that a website was not automatically reachable under the Lanham Act just because it was visible in the United States. In that case, the website was hosted in other countries, including the United States but it was in a foreign language. Also, it was not an interactive website. In another case cited by Defendant, *Guantanamera Cigar Co. v. Corporacion Habanos, S.A*., 672 F. Supp. 2d 106, 112-113 (D.D.C. 2009), the court found that the defendant-competitor's use of mark in its advertisements in foreign cigar industry magazines with United States circulation did not constitute "use in commerce."

These cases are not helpful here. This case is not even factually close to cases about non-interactive websites or magazine advertisements of cigars. The BBX product RIM has launched possesses exactly the same name as Plaintiff's BBX mark, and is being marketed to the same class of consumers, within the same channel of trade. This type of product is created to enhance users' accessibility to the "world wide web," and thus information about products of this kind would naturally be disseminated through the same avenues.

injunction—the intention of the defendant.  Second, BASIS has shown that consumer confusion has already occurred, regardless of the degree of intent on RIM's part.   Third, defendant in the *Trockadero* case formed a New York corporation in order to create a New York presence.  In this case, while RIM's parent corporation may be located in Canada, RIM established a presence in the United States in order to do business here.  As in the *Trockadero* case, allowing RIM to continue the alleged infringement will only continue to dilute recognition of the BBX mark as a BASIS product, and thus will continue to cause damage to BASIS's U.S. registered trademark and reputation.

Accordingly, I find that the Lanham Act may be applied extraterritorially.

**II.     Whether TRO Should Be Granted**

Courts use a well-established four-part test to decide whether to grant injunctive relief.  To obtain a TRO, the moving party must establish that four equitable factors weigh in its favor:  (1) it is substantially likely to succeed on the merits of its claim for trademark infringement; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.  *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

A.     <u>Success on the Merits</u>

To prevail on a trademark infringement case, a plaintiff must demonstrate (1) that its mark is valid and (2) that the defendant's mark is likely to cause consumer confusion.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).  There does not seem to be a question concerning the validity of the BBX mark.  Thus, the central question is whether the alleged trademark infringement is likely to cause consumer confusion.  S*ee Team Tires Plus, Ltd*

*v. Tires Plus, Inc.*, 394 F.3d 831, ("The party alleging infringement has the burden of proving likelihood of confusion.").

The Tenth Circuit has identified a number of factors relevant to determining whether a likelihood of confusion exists: (1) the degree of similarity between the marks; (2) similarity of products and manner of marketing; (3) the strength or weakness of the marks; (4) evidence of actual confusion; (5) the intent of the alleged infringer in adopting its marks; and (6) the degree of care likely to be exercised by purchasers. *Sally Beauty Company, Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002). This list is not exhaustive and the factors enumerated therein are interrelated, with no one factor being dispositive. *Jordache Enters., Inc. v. Hogg Wyld. Ltd*., 828 F.2d 1482, 1484 (10th Cir. 1987).

The Court has considered these factors, and concludes that all of the "likelihood of confusion" factors weigh in favor of BASIS. The BBX mark is identical to the mark which RIM is allegedly using to presenting its BBX product. Given the striking similarity between the two products, the relationship between the goods themselves, or the manner of marketing, need not be as great or as close. *See Bd.. of Regents v. KST Elec., Ltd*., 550 F. Supp. 2d 657, 671 (W.D. Tex. 2008) (noting the greater the degree of similarity in the marks**,** the lesser the degree of similarity that is required of the products or services on which they are being used in order to support a holding of likelihood of confusion). However, there is sufficient similarity in this case to weigh in favor of BASIS. Both BBX products are utilized by software developers to create applications that run on mobile devices. RIM's BBX product is its next generation operation system for its Blackberry products. However, a software application created with BASIS's BBX software will also run on RIM's BBX for Blackberry products. BASIS asserts that the Canadian BBX trademark application filed by RIM identifies similar components to the BASIS BBX

software.  Thus, despite the fact that the two companies are not direct competitors, the parties' respective BBX products are highly related and target the same class of consumers, that is, business application software developers.

BASIS has also demonstrated that its BBX mark is strong.  It has continuously and exclusively used the mark from 1985.  BASIS has spent millions of dollars in revenue advertising its BBX products, including the issuance of thousands of licenses covering hundreds of thousands of United States users.[4]  In stark contrast, RIM has only recently announced its BBX platform in October 2011, meaning there is a vast difference in the quantity and quality of any consumer reputation or goodwill in its mark.  In this case, BASIS has shown that there has been actual confusion resulting from RIM's public announcement of its BBX operation system, satisfying another of the "likelihood of confusion" factors.  *See Jordache Enterprises, Inc. v. Hogg Wyld, Ltd*. 828 F.2d 1482, 1487 (10th Cir. 1987) ("Obviously, the best evidence of a likelihood of confusion in the marketplace is actual confusion.").  Shortly after RIM's public announcement of its BBX operating system, BASIS began receiving inquiries from confused consumers who wanted to know if BASIS "sold out" to RIM or licensed the BBX trademark.

It is not entirely clear whether RIM had a bad faith intent to infringe the BBX mark.  The focus of this factor "is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." *Jordache Enters*., 828 F.2d at 1485.  However, there is sufficient evidence to suggest this.  As noted, BASIS and RIM both offer their respective products to the same class of consumers and in the same channels of trade.  Thus, it is highly unlikely that RIM was unaware of BASIS's BBX software development products before RIM's adoption of its BBX

---

[4] BASIS has supplied affidavits and declarations supporting its argument on all the factors being considered by the Court.

mark.  It is reasonable to infer that RIM chose this mark intending to confuse the public, or to benefit from the goodwill earned over the years by BASIS's trademark.

The last factor considers the degree of care likely to be exercised by purchasers.  It would seem reasonable to assume that the typical buyer for the products at issue are somewhat sophisticated because these products are expensive and are not purchased without considerable research and forethought.  Thus, the degree of purchaser care "significantly" decreases the likelihood of consumer confusion.  *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 282 (6th Cir. 1997).  That being said, the effect of purchaser care, while relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue in that "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Id*.   In this case, the identical nature of the BBX marks attenuates any discrimination a sophisticated user might bring to bear in purchasing this product.

As a result, I find that the "likelihood of confusion" weighs in BASIS's favor, and that BASIS has established a likelihood that it will prevail on the merits.

B. <u>Irreparable Injury</u>

BASIS claims that irreparable harm will result if an injunction is not granted.  This factor also weighs in favor of BASIS because trademark infringement "by its very nature" results in irreparable harm to the owner of the mark.  *See Amoco Oil Co. v. Rainbow Snow, Inc.*,  809 F.2d 656, 663 (10th Cir. 1987); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 & n.10 (10th Cir. 1996) (Once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits "[b]ecause the financial impact of copyright infringement is hard to

10

measure and often involves intangible qualities such as customer goodwill.").[5]

The Court also agrees with BASIS that, even without this presumption, BASIS has satisfied this prong. The alleged infringement is likely to cause customers and prospective customers to wrongly believe that the software applications created using BASIS's development tools are only compatible with RIM's BBX operating system. This assumption could impair and destroy BASIS's reputation for providing software development tools for cross-platform development. Money damages cannot replace this lost reputation.

C. Balance of Harm

This factor weighs the injury in order to determine whether the inconvenience, expense and confusion that RIM will suffer if an injunction is granted will outweigh the confusion and potential lost sales that BASIS will suffer. I think it is clear that, given the recency of RIM's announcement of its BBX product compared with the time-tested use and marketing by BASIS of its BBX mark, RIM's harm is minimal. This factor also weighs in favor of BASIS.

D. Public Interest Factor

This factor normally weighs in favor of the issuance of an injunction because the public interest *is* the interest in upholding copyright protections. *Autoskill Inc. v. Nat'l Educ. Support Systems*, 994 F.2d 1476, 1499 (10th Cir. 1993).

RIM argues for a "heightened" burden which BASIS must show in trademark actions,

---

[5] As BASIS acknowledges, the United States Supreme Court has recently questioned this presumption in relation to patent infringement cases. In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837 (2006), the Supreme Court remanded the case for the district to reconsider the injunctive relief factors, noting that a patent holder's willingness to license its patents, and lack of commercial activity in practicing patents did not by themselves establish that holder would not suffer irreparable harm. I agree with BASIS that this case does not change the analysis here. Unlike patent cases, trademark cases involve intangibles like the trademark owner's reputation and goodwill.

noting the "extraordinary" nature of a TRO.  *See* Notice of Supplemental Authority, Doc. 33. The cases cited by RIM do not modify the analysis which the Court has conducted above. The Court recognizes the special nature of trademark actions and the potential risk of injury to both parties in cases like this one.  However, I am convinced that BASIS has shown that its trademark is valid and incontestable, and that the factors which must be considered weigh heavily in its favor. *See, e.g., Federation Internationale De Football Ass'n v. Nike, Inc.*, 285 F.Supp.2d 64, 68 (D.D.C.,2003) (The threshold question in any infringement action is whether the plaintiff has a "valid mark entitled to protection.").   Accordingly, after considering all the factors relative to a determination of whether an injunction should be granted, the Court finds that all factors weigh in favor of BASIS.

## III.   Bond

Fed.R.Civ.P.Rule 65 requires that BASIS post security as the Court deems proper to protect RIM if it is later determined that an injunction should not have been granted.  While the language of the rule appears mandatory, the Court has wide discretion in determining whether to set a bond, and how much.[6]  *See Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d at 1158 (recognizing that the trial court has "wide discretion" in setting the amount of the preliminary injunction bond); *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (holding that a trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction "if there is an absence of proof showing a

---

[6] Rule 65(c) provides in part that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d at 1158.

likelihood of harm).

BASIS suggests a limited bond based on the limited nature of the requested relief. BASIS notes that it is not seeking to prevent RIM from attending the Singapore conference, or from presenting its new software product; it seeks only to preclude RIM from using the BBX mark.  The $50,000.00 bond amount suggested by BASIS is acceptable to the Court.

## Conclusion

In sum, I find and conclude that the Lanham Act may be applied extra-territorially.  I also find and conclude that the factors necessary to grant a TRO all weigh in BASIS's favor.  BASIS will be required to post a security bond in the amount of $50,000.00.

## Temporary Restraining Order

The Court hereby GRANTS Plaintiff's Motion for a Temporary Restraining Order (**Doc. 21**), ordering as follows:

Research In Motion Limited and Research In Motion Corporation (collectively "RIM") is hereby enjoined from using the mark BBX in connection with the BlackBerry DevCon Asia conference being held in Singapore from December 7, 2011 until December 8, 2011 ("DevCon Asia").  This Order applies to RIM, their agents, servants, employees, officers and all other persons in active concert or participation with them, for a period of 14 days from entry of this Order unless otherwise extended by this Court for good cause, are hereby immediately restrained from:

1. using any reproduction, counterfeit, copy, or colorable imitation of any BBX trademark in connection with the publicity, promotion, sale or advertising of RIM's goods or services at or in connection with DevCon Asia; or,

2. using any BBX trademark or any name or any marks similar thereto, including but not

limited to, in connection with any presentations, websites, materials, advertising, offers for sale at or in connection with DevCon Asia.

**IT IS THE FURTHER ORDER OF THE COURT** that, pursuant to Fed. R. Civ. P. 65(c), BASIS post security with the Clerk of this Court in the amount of $50,000.00.

The Court has granted the foregoing Temporary Restraining Order for the reasons set forth below: BASIS is likely to prevail on its trademark infringement claim as BASIS holds incontestable federally registered trademarks covering the BBX mark and consumers are likely to be confused by RIM's use of BBX in connection with RIM's goods and services;

Pursuant to *Country Kids ' N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 (10th Cir. 1996), irreparable harm is presumed upon a demonstration a likelihood of success on the merits.

The threatened injury to BASIS outweighs the injury RIM will suffer from being unable to use the mark in connection with DevCon Asia; and,

Granting the injunction will serve the public interest by preventing likely consumer confusion as to the source or sponsorship of goods and services available to the general public.

Pursuant to Rule 65, the Temporary Restraining Order will automatically expire after fourteen (14) days.

_____
UNITED STATES DISTRICT JUDGE